Rex E. JORDAN, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 74-1240.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1974.

Decided Sept. 24, 1974.

Weick, Circuit Judge, dissented.

Ralph H. Adams, Detroit, Mich., on brief, for plaintiff-appellant.

Ralph B. Guy, Jr., U. S. Atty., Michael D. Gladstone, Asst. U. S. Atty., Detroit, Mich., on brief, for defendant-appellee.

Before WEICK, PECK and MILLER, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This appeal was perfected from the district court's order granting defendant-appellee's motion to dismiss plaintiff-appellant's malpractice claim on the grounds that it was barred by the lapse

of 28 U.S.C. § 2401(b),[1] the two year statute of limitation applicable to tort claims filed against the United States under the Federal Tort Claims Act. The sole question for consideration here is whether the district court correctly found that appellant's claim "accrued" sometime in 1969 rather than on June 7, 1971, as he contended.

Appellant, Rex E. Jordan, is a one-eyed[2] World War II veteran who relied on Veterans Administration facilities for all his medical needs after 1968. In November of that year, after being treated for chronic sinusitis for the previous four years by the personnel of the Allen Park, Michigan, Veterans Administration Hospital, appellant underwent nose surgery at that facility in the hopes of alleviating his sinus condition. Immediately thereafter his upper face became bruised and swollen, and his right eye was swollen shut to such an extent that it was impossible for him to see at all. Four or five days later when he was again able to see, appellant noted that there were bruised, discolored areas below both his good right eye and his artificial left one. At this time he also observed that the pupil of his right eye wandered to the right and his vision seemed to be reduced. In response to his questions about his right eye, a doctor, who was not the one who performed the operation, informed appellant, after first conducting a brief bedside examination, that the eye problems were the result of muscle damage caused by procedures required to deal with the unanticipated "severity" of his sinus condition. Shortly thereafter appellant was examined by personnel he assumed were "eye" doctors and, prior to his discharge from the hospital, he was told to return early the next year for corrective eye surgery.

The first eye operation was performed at the Allen Park Hospital in January, 1969 and did not improve appellant's vision. He was then informed that another operation would be necessary. During this period he prompted the Rehabilitive Service of the Veterans of Foreign Wars to make efforts to get his disability rating increased since his loss of vision in the right eye was the result of his sinus operation. Appellant was operated on again in February, 1969, but this operation was also unsuccessful. He was then told to return to the Hospital every three months for eye examinations.

In the following months appellant's eyesight grew progressively worse. During this period he was examined by the Post Office medical officer, a Dr. Blough, who indicated that in his opinion appellant was no longer fit to work due to his reduced sight. Finally, in February, 1970, appellant was forced to retire from his job with the Post Office because his eyesight had become so poor.

Appellant continued to return to the VA hospital for treatment of his sinus condition and for his eye examinations. On June 7, 1971, during one of these tri-monthly eye examinations, appellant was told by the examining doctor that such visits were no longer necessary as there was nothing more they could do for the eye, and that it was "too bad they screwed up your eye when they operated on your nose." Appellant then retained a lawyer and on June 1, 1972, a formal claim was filed on his behalf with the Veterans Administration. This claim was denied on October 20, 1972, and four days later this suit was initiated. Appellee then moved to dismiss appellant's complaint on the ground that the statute of limitations had run, and

1. 28 U.S.C. § 2401. Time for commencing action against United States.

"(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

2. According to the record appellant lost his left eye as a result of a hand grenade injury sustained in Italy in 1944.

the district court ordered a hearing on the issue.[3]

At this hearing, appellant, who was the only witness called by either party, testified that prior to June 7, 1971, he had no idea that his eye problem could have been caused by an act of malpractice committed during the November, 1968 surgery. On cross-examination, he admitted that he had been told that the "severity" of the nose operation led to the eye injury. He also admitted that the signature on a Report of Medical Examination for Disability Evaluation was his, but denied any recognition of the form, or of the handwriting comprising the body of the Report,[4] and testified further that the VFW representative had his medical records and "took care of that [his correspondence in this matter] for me." Counsel for appellee then offered into evidence a letter dated March 10, 1970, which had been submitted to the VA by the VFW on appellant's behalf, and, after it was received, he read the following paragraph:

> "Further, we would like to bring to your attention that your rating action, dated August 20, 1969, failed to answer the question presented in our letter of February 24, 1969. If you will note, this service had contended that the veteran's right eye condition was directly due to the operation for his service connected chronic sinusitis. This letter was supported by a medical statement from Glen A. Brough, M.D., which showed, 'There is considerable hemorrhage about the inter aspect of the right eye which is completely out of balance and points to the outer side.' In addition, this report also contended that this condition was of such a severe nature, the vereran was unfit for duty."

Thereafter the hearing was terminated. Subsequently the district court found that appellant's claim accrued at some unspecified time in 1969, and granted appellee's motion to dismiss.[5] This appeal followed.

■ In medical malpractice actions brought against the United States under the Federal Tort Claims Act, it is well established that federal law governs when a "claim accrues" under 28 U.S.C. § 2401(b) for the purpose of fixing the point at which the two year limitation period begins to run against a claimant. See Ytreberg, State or Federal Law as Controlling When Cause of Action Accrues or Statute of Limitations Begins to Run under the Federal Tort Claims Act, 7 A.L.R.3d § 2 at 734 (1966). The test applied in making this determination is that the "claim accrues" against the government, and consequently the statute begins to run "when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice." Hungerford v. United States, 307 F.2d 99, 102 (9th Cir. 1962); Quinton v. United States, 304 F.2d 234, 240 (5th Cir. 1962). Implicit in the federal cases applying this "discovery" rule is the requirement that the claimant must have received some information, either by virtue of acts he has witnessed or something he has heard, or a combination of both, which should indicate to him, when reasonably interpreted in light of all the circumstances, that his injury was the result of an act which could constitute malpractice. Toal v. United States, 438 F.2d 222 (2d Cir. 1971); Ashley v. United States, 413 F.2d 490 (9th Cir. 1969); Kossick v. United States, 330 F.2d 933 (2d Cir. 1964); Hungerford v. United States, *supra*; Quinton v. United States, *supra*; Johnson v. United States, 271 F.Supp. 205 (W.D.Ark.1967); Bizer v. United States, 124 F.Supp. 949 (N.D.Cal.1954).

---

3. Memorandum Opinion on Motion to Dismiss, Jordan v. United States, Civil Action No. 39100 (E.D.Mich., filed April 17, 1973).

4. After these responses, counsel for the government did not offer the Report as evidence, nor does it appear anywhere in the record before us.

5. Jordan v. United States, Civil Action No. 39100 (E.D.Mich., filed September 28, 1973).

Thus the specific question confronted by the district court in this case was when did this claimant receive sufficient information to be chargeable with the knowledge that the acts which damaged his eye muscles could constitute malpractice. Unless it is "clearly erroneous," the district court's answer must be affirmed. Fed.R.Civ.P. 52(a).

The district court concluded, and the government argued here, that particularly after the two unsuccessful eye operations in 1969 and the consequences resulting thereafter from the continuing loss of sight, "there came knowledge of facts sufficient to alert a reasonable person that there may have been negligence . . . ." Jordan v. United States, Civil Action No. 39100 (E.D. Mich., filed September 28, 1973), citing Brown v. United States, 353 F.2d 578, 580 (9th Cir. 1965). Thus they reasoned that appellant should have been "alerted" in 1969, and the subsequent delay in commencing his action was due to his lack of reasonable diligence. Initially we note that we are not persuaded that the standard quoted above is an accurate substitute for the generally accepted test. However, we need not decide this question here since a thorough review of the record has convinced us that the district court's finding that appellant's claim accrued sometime in 1969 would be "clearly erroneous" under either version of the test.

As previously indicated, appellant was the only witness to testify before the district court. His credibility was not questioned at all during the proceedings, nor do we think his testimony was effectively rebutted by the government's evidence.[6] Aside from confirming the fact that the VFW was attempting to get appellant's disability rating increased, the March 10 letter submitted by appellee established Dr. Blough's diagnosis of the condition of appellant's eye and the VFW's opinion that the loss of vision was "directly due" to the sinus operation. In view of appellant's denial of any recognition of the form or substance of the Report of Medical Examination for Disability Evaluation and his statements to the effect that the VFW had his medical records and took care of his correspondence for him, it is unclear whether appellant was aware of the contents of this letter. But, even assuming he was aware, the effect of his testimony is not reduced since there is nothing inherent in the letter which would indicate that the eye injury was the result of an act of malpractice, or that appellant perceived such to be the case. See Toal v. United States, 438 F.2d 222, 224 (2d Cir. 1971). The question remains whether appellant should have been aware, in the exercise of reasonable diligence, that his injury could be the result of a tortious act committed by a physician.

■ Although the evidence contained in the record established that appellant was aware that muscle damage sustained during his 1968 sinus operation led to

---

**6.** The record reveals that in addition to the documents noted above several other documents concerning appellant, which were in the possession of appellee, were submitted to the district court appended to appellee's Memorandum of Law in Response to Plaintiff's Memorandum of Law in opposition to the Government's Motion to Dismiss. Except for the following excerpt from a Neuropsychiatric Examination dated July 23, 1969, the documents were not cited by the district court, nor were they made a part of the record before us:

"[H]e states that during the surgery they injured his right eye causing a deviation and decreasing vision. . . . He was employed at the U. S. Post Office as a mail handler and was told not to come back because of decreasing vision. He also states his eye hurts and although he drives a car he knows it is very dangerous because he doesn't see well. . . . Since his recent eye difficulties he has become increasingly nervous and worried about his financial future and security." We are of the opinion that the reasoning stated above concerning the March 10 letter would also have been applicable to the excerpt quoted above had it been properly before the district court.

his loss of sight, it failed to show that this appellant, in the exercise of reasonable diligence, should have been aware that the muscle damage may have been the result of the improper performance of his sinus operation. Contrary to the characterization of the district court and the government, neither the unsuccessful eye operations nor the other events established by the record signified that anything had been done incorrectly in November, 1968. They indicated only that appellant's injury was causing his loss of vision and was apparently permanent, but not that it was the result of malpractice. Moreover, these developments were not inconsistent with appellant's belief that the loss of his vision was the inevitable consequence of the proper procedures used by the doctors to treat his "severe" sinus condition during the November, 1968 operation. Thus they provided no clue that his belief, though based on a VA doctor's response to his questions, might be incorrect.

■ Admittedly the eye injury which developed after the sinus operation was "unusual and unexpected," Brown v. United States, 353 F.2d 578, 580 (9th Cir. 1965), and required some investigation. However, it is undisputed that shortly after discovering the symptoms appellant investigated their cause and received what he considered to be a credible explanation. In addition, the record reveals no evidence which indicates that appellant ever witnessed anything prior to June 7, 1971, which should have led him to believe that the explanation he had received was not totally accurate or that he was the unfortunate victim of an act of malpractice. In this situation we do not believe that it can be said that appellant failed to exercise reasonable diligence. While no reliance is placed on this additional circumstance, it is observed that this determination is not inconsistent with the recognized fact that an individual receiving medical assistance from such an agency is in a substantially different position than that of a patient being ministered to by a private physician, and faces even greater obstacles in attempting to determine any untoward aspect of the treatment administered.

Taken as a whole the facts established by the evidence in the record not only fail to show a lack of reasonable diligence, but also fail to show that, prior to June, 1971, appellant was sufficiently acquainted with the exact nature of his disability and its relationship to the proper performance of his sinus operation, Brown v. United States, supra, to enable him to draw the conclusion that the acts which damaged his eye muscles could constitute malpractice. In short, prior to the VA doctor's statement on June 7, 1971, there is nothing in the record which would give appellant any reason to believe that the acts performed during the 1968 operation which caused his loss of vision may have been improperly done. Affirmance of the district court's decision under these circumstances would perpetrate an injustice similar to the one sought to be corrected by the adoption of the so-called "discovery" rule in the federal and state courts since appellant's claim would be barred prior to the time when he had any reasonable cause to believe that the acts which caused his injury were wrongful. See, e. g., Quinton v. United States, supra, 304 F.2d at 240; Lundberg v. Bay View Hospital, 175 Ohio St. 2d 133, 137, 191 N.E.2d 821, 824 (1963).

The district court's decision is reversed, and the case is remanded for further proceedings not inconsistent herewith.

WEICK, Circuit Judge, dissents.