**James L. WAITS, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 78–1294.**

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1980.

Rehearing Denied April 18, 1980.

Robert E. Hauberg, U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., for defendant-appellant.

George F. Bloss, III, Gulfport, Miss., Bobby G. O'Barr, Biloxi, Miss., Boyce Holleman, Gulfport, Miss., for plaintiff-appellee.

Before MORGAN, REAVLEY and HATCHETT, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

James Waits brought this medical malpractice action against the United States under 28 U.S.C. § 2671 et seq., for damages resulting from the negligence of the personnel of the Veterans' Administration Hospital in New Orleans, Louisiana. The District Court for the Southern District of Mississippi entered judgment for Waits, awarding damages of $266,823.36, and the United States appealed. The principal contention urged by the government is that Waits' claim is barred by the statute of limitations.

Waits entered the Veterans' Administration Hospital in New Orleans on November 27, 1972 for treatment of compound fractures of the right hip and leg sustained in a motorcycle accident. Two Steinmann pins were inserted through Waits' leg on November 28, 1972, and Waits was placed in skeletal traction. About three weeks later a pin tract infection was detected on the lateral aspect of the supracondylar area of the right femur, and the treating doctors administered an antibiotic known as Keflex. The infection persisted and Waits' condition worsened. A culture and sensitivity (C&S) test was ordered on December 26, 1972, but the results of this test were not placed in Waits' medical records or made available to his doctors until some unknown date subsequent to his discharge on January 5, 1973.

The standard of professional care then prevailing in New Orleans, as found by the district court, required that C&S tests be completed and results returned to an attending doctor within 72 hours at the very most. Nevertheless, the doctors at the VA Hospital continued to treat Waits without the benefit of the C&S results, ordered no additional C&S tests, and administered Keflex to the exclusion of any other antibiotic.

His condition rapidly deteriorating, Waits contacted his brother's brother-in-law, Dr. William Tisdale, who was a general practitioner in Biloxi. Dr. Tisdale briefly examined Waits' leg at the VA Hospital and immediately demanded that Waits be released to seek treatment at a different hospital. Waits left the New Orleans VA Hospital and was admitted to the Howard Memorial Hospital in Biloxi on January 5, 1973.

At Howard Memorial, Waits was examined by Dr. M. F. Longnecker, an orthopaedic surgeon. Longnecker ordered a C&S test on January 6, and the results were reported to him within two days. The C&S results showed a deep bone infection of the leg, and the presence of E. Coli and Pseudomonas. While E. Coli is sensitive to the drug Keflex, which had been administered by the doctors at the New Orleans VA Hospital, a mixed strain of E. Coli and Pseudomonas is resistant to Keflex. A number of drugs, including Garamycin, are efficacious against the mixed strain, but none of these drugs were prescribed or administered by the VA Hospital doctors.

By the time the causative organism had been identified, the bone infection had advanced to such a severe state that Dr. Longnecker was required to amputate Waits' right leg approximately eight inches below the hip joint.

Waits retained counsel to prosecute his claim against the driver of the vehicle with which he had collided, and in July of 1974, Waits' attorneys began to seek the medical records disclosing his treatment at the New Orleans VA Hospital. Despite the persistent efforts of Waits' attorneys, the complete medical records were not delivered by the VA Hospital until October 15, 1974.[1]

---

1. Even when the medical records were finally received by Waits' attorneys on this date, the results from the New Orleans VA Hospital's December 1972 C&S test of Waits' leg still

After examining these records, Waits' attorneys determined that the VA Hospital had been negligent in its treatment of Waits. Waits' administrative claim was received by the government on January 24, 1975, just over two years after his release from the New Orleans VA Hospital.

■ The government argues first on appeal that Waits' claim is barred by the two-year statute of limitations of 28 U.S.C. § 2401(b). That section provides in part:

A tort action against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues . . . .

In the context of medical injury cases, where the injury or its cause may not be manifested to the plaintiff until many years after the event, the tort action does not "accrue," for statute of limitations purposes, until the plaintiff is put on notice of the wrong. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). This court extended the *Urie* doctrine to medical malpractice cases under the Federal Torts Claims Act in *Quinton v. United States*, 304 F.2d 234 (5th Cir. 1962), and other circuits followed in agreement.[2]

■ The question of what knowledge should put a claimant on notice of the existence of a viable claim is not soluble by any precise formula. In *Quinton*, we set the critical moment of accrual at the time when "the claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which his claim is based." 304 F.2d at 235. It is not enough to trigger the statute of limitations that the claimant is aware of his injury if he is unaware of the act or omission which caused the injury. *De Witt v. United States*, 593 F.2d 276 (7th Cir. 1978); *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974). In its most recent consideration of the issue, the Supreme Court chose not to disturb this "blameless ignorance" doctrine, as applied to plaintiffs ignorant of the negligent act or injury, but could not condone an extension of the doctrine to protect a plaintiff ignorant only of the legal or medical significance of a known act and injury. *United States v. Kubrick*, — U.S. —, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In this instance, we deal only with ignorance of the underlying facts of the hospital's malpractice.[3]

---

were nowhere to be found. The test results mysteriously appeared in Waits' medical records sometime between October 15, 1974, and the date of the trial, May 23, 1977. Questioned by the district court, the attorneys for the government were at a loss to explain the sudden appearance of the test results. The December 1972 C&S test indicated the presence of *E. Coli* and *Klebsiella* in the infected area of Waits' leg.

**2.** *See Sanders v. United States*, 179 U.S.App. D.C. 272, 551 F.2d 458 (D.C.Cir. 1977); *Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976); *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975); *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974); *Portis v. United States*, 483 F.2d 670 (4th Cir. 1973); *Tyminski v. United States*, 481 F.2d 257 (3d Cir. 1973); *Toal v. United States*, 438 F.2d 222 (2d Cir. 1971); *Hungerford v. United States*, 307 F.2d 99 (9th Cir. 1962).

**3.** In *Kubrick*, the plaintiff was treated with neomycin for an infection of the right *femur*. The irrigation of the infected area with neomycin led to a ringing sensation and the loss of some hearing in Kubrick's ears six weeks later.

Kubrick was advised by an ear specialist, who had secured Kubrick's hospital records, that the loss of hearing might be due to the neomycin treatment administered at the hospital. Despite his knowledge of the cause of his deafness, Kubrick failed to file a claim within two years of his doctor's diagnosis. The district court and court of appeals allowed the claim, however, because Kubrick had filed within two years of the time he was advised that the use of neomycin was negligent. In reversing, the Supreme Court was careful to establish that "Kubrick was aware of his injury and its probable cause" more than two years before he initiated his lawsuit. — U.S. at —, 100 S.Ct. at 357, 62 L.Ed.2d at 267.

Regarding the "blameless ignorance" rule, the Court concluded:

We are unconvinced that for statute of limitation purposes, a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant unavailable to the plaintiff or

The isolation of facts the knowledge of which should have alerted Waits to the existence of his claim begins with a consideration of the findings of negligence made by the district court. The VA Hospital was found to be negligent in three respects: (1) in the failure of VA physicians to order a C&S test until ten days after first noticing the infection; (2) in the failure of VA physicians to administer alternative antibiotics after the apparent failure of Keflex to eradicate the infection; and (3) in the failure of the VA Hospital laboratory to report back to Waits' chart or records the results of the C&S test within a reasonable time.

■ The district court further found that these acts of negligence were not known to Waits until the records detailing his mistreatment were finally released by the VA Hospital in October 1974. Prior to that time, Waits knew only that his treatment at the VA Hospital had been unsuccessful. Mere dissatisfaction with the results of medical treatment, however, is not to be equated with knowledge of negligence. Sitting by designation with the Seventh Circuit in *De Witt, supra,* Fifth Circuit Judge Wisdom noted, "A surgical procedure is not malpractice simply because it does 'not turn out as it was supposed to have.' To recover damages, the patient must prove that the disappointing outcome of the surgery resulted from a breach of care by medical personnel." 593 F.2d at 280.

Prior to his acquisition of hospital records, Waits was not aware of the failure of the VA Hospital laboratory to produce C&S test results or of the decision of the VA doctors to proceed without the benefit of test results. He was not aware of the type of antibiotic that the doctors had administered to him, or of their continued reliance on an antibiotic that had proven to be ineffective against the infection in his leg. He knew only that the infection in his leg had not been successfully attacked, and that even his new doctor at the Howard Memorial Hospital could not save his leg.

The government argues that Waits should have realized his cause of action before his release from the VA Hospital on January 5, 1973, citing Waits testimony that hospital personnel informed him that a contaminated pin had been placed in his leg. The act of causing or allowing the infection to occur, however, is not the basis of Waits' action. It was the failure of the hospital to *treat* the infection that was found by the district court to be negligent. Indeed, the record suggests that infection of injuries as severe as Waits' is a common problem and does not necessarily indicate that the hospital has been negligent.

■ Assuming for the sake of argument that Waits should have been alerted by all the circumstances leading to the amputation of his leg, the blame for his failure to discover the specific acts of negligence causing his injury must rest with the VA Hospital. Had the hospital responded to Waits' request for records without great delay, Waits would have realized his cause of action in time to file a claim with no statute of limitations problem. No doctor or attorney could advise him of the merits of his claim while the facts of the VA Hospital's negligence remained lost in inaccessible hospital files. The record amply supports the district court's finding that Waits did not know, and with expectable inquiry did not and could not learn, that the VA Hospital had negligently injured him until the hospital records were delivered to Waits' attorneys in October 1974.

The remaining arguments raised by the government on appeal are without merit. The judgment of the district court is

AFFIRMED.

---

at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.
*Id.* at ――, 100 S.Ct. at 359, 62 L.Ed.2d at 269.