**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-60245
Summary Calendar

JAMES V. DANIELS,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA, Department of Veterans Affairs,

Defendant-Appellee.

Appeal from United States District Court
for the Southern District of Mississippi
(USDC No. 3:96-CV-864-B-N)

July 19, 1999

Before POLITZ, BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant James V. Daniel[1] ("Daniel") challenges a judgment dismissing his medical malpractice suit under the Federal Tort Claims Act of 1947 ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680 (1994), for lack of subject matter jurisdiction based on Daniel's failure to file his administrative claim within the FTCA's two-year statute of limitations.  Finding no error, we affirm.

**I**

On June 16, 1992, Daniel was admitted to the Veterans Administration ("VA") Hospital, a division of Defendant-Appellee Department of Veterans Affairs ("Department"), in Jackson, Mississippi, complaining of chest pain.  Daniel, who had undergone coronary bypass surgery in 1987,

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

[1] Although the case caption states "Daniels," Appellant's surname is "Daniel."

was diagnosed with angina and was scheduled for a cardiac catheterization procedure. Prior to the procedure, a blood glucose test revealed Daniel's blood sugar to be elevated beyond normal range. Nonetheless, the catheterization procedure continued apace.

Conforming to standard practice, physicians at the VA placed Daniel on a saline drip during the procedure; a small portion of this intravenous liquid consisted of sugar. The catheterization procedure itself was unremarkable, and Daniel was discharged on June 18, feeling better and with no reported complaints. His treating physicians scheduled him for a September 16 routine follow-up at the Lipid Clinic, where he had previously been treated for heart problems. During the course of his stay at the VA Hospital, he had remained on the saline drip for approximately thirty hours.

On August 10, Daniel returned to the VA with a series of new complaints. At that time, he was diagnosed with "new onset" adult diabetes and was hospitalized for two weeks.

On September 16, Daniel attended his scheduled appointment at the Lipid Clinic. His examining physician inquired why Daniel was taking insulin, and Daniel informed him that he had been diagnosed with diabetes the previous month. Daniel then asked the physician why he had "come down" with diabetes. According to Daniel, the physician replied, "[t]hey must have gave [sic] you straight glucose or they made a big mistake on it." Daniel "came home and thought about it" and then sought legal advice; his attorney advised him to obtain his records from the VA.

Daniel did not make his first written request to the VA for records until December 8, 1992. He subsequently made two additional requests, on January 27, 1993, and on May 2, 1994. The records custodian for the VA testified at trial that she had responded to each of Daniel's requests within a few days, and that each time she had provided Daniel with the specific records he requested.

On December 8, 1994, Daniel filed an administrative claim with the Department of Veterans Affairs, pursuant to the FTCA, alleging that he was injured as a result of the administration of glucose while he was in the VA Hospital. The Department denied the claim on June 13, 1996, and Daniel then timely filed suit in the district court on November 27, 1996. See 28 U.S.C. § 2401(b) (providing a six-month period for filing a court action after the denial of an administrative claim).

2

At the bench trial, Daniel contended that the administration of intravenous sugars and the delay in treatment resulting from the failure by physicians at the VA Hospital to diagnose his diabetes damaged him. A battle of medical experts ensued: Daniel's expert testified that the VA Hospital's negligence had caused Daniel irreparable damage, while the Department's four experts testified that, while a patient such as Daniel who presents elevated blood sugar should have been additionally tested, Daniel's diabetes could not have been caused or even seriously exacerbated by his physicians' failure to do so. Following trial, the district court dismissed the case for want of subject-matter jurisdiction. The court found that Daniel had knowledge in September 1992 of his injury and its cause sufficient to trigger the statute of limitations. In particular, the court found that Daniel "concluded that it was necessary or in his best interest for him to seek legal advice in September of 1992. That started the statute of limitations running." Thus, the court ruled that Daniel's December 1994 claim was not timely.

The district court also ruled on the merits of the case and determined that the VA's failure to perform any additional testing or to provide follow-up care was a breach of the standard of care applicable under Mississippi law. The court also found, however, that Daniel failed to prove a causal connection between the breach and his current complaints. The court noted that Daniel had complained of the problems for only one month prior to the August hospitalization and found that Daniel did not appear to be mentally incapacitated at trial. The court stated that, after "evaluating the testimony of all the doctors, [the court] is persuaded that the plaintiff has failed to prove by a preponderance of the evidence the causal relationship between the negligence" and his current complaints.

**II**

**A**

On appeal from a bench trial, we review a district court's findings of fact for clear error and its conclusions of law *de novo*. See Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313, 316 (5th Cir. 1999). A factual finding is not clearly erroneous if it is plausible in

3

light of the record as a whole.  See Johnson v. Hosp. Corp. of Am., 95 F.3d 383, 391 (5th Cir. 1996).

A finding that a suit is barred by the statute of limitations is a conclusion of law, see Kiser v. Johnson, 163 F.3d 326, 327 (5th Cir. 1999), but the factual findings upon which that conclusion are based are nonetheless still reviewed for clear error.  See United States v. Meador, 138 F.3d 986, 991 (5th Cir. 1998).

**B**

The FTCA's statute of limitations provides that

> A tort claim against the United States shall be forever barred *unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues* or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).  These time limits are jurisdictional in nature, see Flory v. United States, 138 F.3d 157, 159 (5th Cir. 1998), and, because the FTCA constitutes a waiver of sovereign immunity, are to be strictly construed in favor of the United States.  See Atorie Air, Inc. v. FAA, 942 F.2d 954, 958 (5th Cir. 1991).

In medical malpractice cases, the FTCA's limitations period "does not begin to run until after the patient discovers or in the exercise of reasonable diligence should discover his injury and its cause."  MacMillan v. United States, 46 F.3d 377, 381 (5th Cir. 1995) (internal quotations and citations omitted).  The plaintiff, however, need not be aware of the legal or medical significance of the act or injury for the cause of action to accrue.  See id.  Indeed, in United States v. Kubrick, 444 U.S. 111 (1979), the Supreme Court stated that

> [w]e . . . cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted.  A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community.  To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

444 U.S. at 123.  Accordingly, the statute of limitations begins to run when the plaintiff has "knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal

4

connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury." MacMillan, 46 F.3d at 381.

Daniel asserts that he was not in possession of "critical facts" sufficient to put him on notice of any legal rights or remedies until he received all his medical records in May 1994. At the earliest, Daniel contends, the statute of limitations did not start running until some time after he made his first request for medical records on December 8, 1992. He argues that until he was in possession of documentation, he "was not in a position in which he could seek to enforce any judicial remedy." He further contends that the statement by the physician at the Lipid Clinic that the physicians at the VA Hospital erred was insufficient because the physician did not tell Daniel that he was injured or that he was affected by the mistake.

As Kubrick establishes, Daniel's lack of knowledge of the legal consequences of his treatment is of no moment. Further, a definitive diagnosis establishing a link between the injury and its cause is not necessary for the period to start running. For example, in MacMillan, the plaintiff's child had serious complications at birth and later exhibited neurological problems. See MacMillan, 46 F.3d at 378-79. Years after the birth, a psychologist opined that the child likely suffered anoxia at birth and probably sustained neurological damage as a result. See id. at 380. This court held that, in light of the plaintiff's knowledge of the child's difficulties at birth, the psychologist's report should have compelled a "reasonable person to seek professional advice regarding" the connection, if any, between the birth complications and the neurological damages. Id. at 381. Thus, the cause of action accrued when the plaintiff received the report from the psychologist. See id.

Daniel relies on two cases in support of his contention that he did not have sufficient knowledge: Waits v. United States, 611 F.2d 550 (5th Cir. 1980), and Stoleson v. United States, 629 F.2d 1265 (7th Cir. 1980). Both cases are inapposite. In Waits, the plaintiff had no knowledge of the cause of his injury until receiving his records. See 611 F.2d at 553. Additionally, unlike the case at bar, the VA delayed providing the records, excusing the plaintiff from failing to discover the cause

5

of his injury.  See id.  In Stoleson, several physicians told the plaintiff that there was no connection between her workplace exposure to nitroglycerin and her heart problems.  See 629 F.2d at 1267. Given the lack of any known medical connection, our sister circuit held that the cause of action did not accrue until there was documented medical evidence linking the nitroglycerin exposure to her ailment.  See id. at 1270-71.

In contrast to Waits and Stoleson, Daniel knew in August 1992 that he had been diagnosed with diabetes.  When he relayed this information to his physician at the Lipid Clinic in September 1992, he was told that a mistake might have been made.  He then went home and "thought about it," sought legal advice, and began to request his medical records.  Accordingly, the September 1992 statement by the Lipid Clinic physician gave Daniel sufficient information to link the treatment at the VA to his ailments.  As the trial court noted, Daniel subjectively determined that it was necessary to seek professional advice regarding this problem.  Moreover, under an objective, "reasonable person" standard, the statement of the Lipid Clinic physician, coupled with the June hospitalization and subsequent deterioration in health, would have led a reasonable person to seek professional advice. See MacMillan, 46 F.3d at 381.  Thus, the trial court did not err in determining that the statute of limitations began to run in September 1992, rendering Daniel's December 8, 1994, VA claim untimely.

Daniel makes a half-hearted attempt at an equitable tolling argument on the basis that he did not have all the records from the VA until May 1994.  Although Daniel does not expressly brief this contention, the Government addressed it, and, for the sake of completeness, so shall we.  Daniel offers support for equitable tolling in his case with two citations: Harrison v. United States, 708 F.2d 1023 (5th Cir. 1983), and Waits.  In Harrison, we noted that the intentional withholding and alteration of records by the VA prevented the plaintiff from ascertaining her condition, and thus the defendant bore a "heavier burden" of showing that the plaintiff possessed enough information to "commence accrual of the statute of limitations."  708 F.2d at 1027 n.1.  In Waits, discussed *supra*, the VA also delayed in providing records.  See 611 F.2d at 553.  The testimony at trial in the instant case,

6

however, indisputably showed that the VA responded timely and completely to each of Daniel's requests for records. Thus, <u>Harrison</u> and <u>Waits</u> are not applicable and Daniel's argument is without merit.

Having reviewed the record, we find no error either in the district court's factual findings or in its determination that the statute of limitations began to run in September 1992, rendering Daniel's December 8, 1994, administrative claim untimely.[2] <u>See</u> <u>MacMillan v. United States</u>, 46 F.3d 377, 381 (5th Cir. 1995).

### III

For the reasons given above, we AFFIRM the judgment of the district court.

---

[2] As this determination is dispositive of this appeal, we need not address Daniel's argument that the district court erred in finding a lack of causation between the Department's negligence and Daniel's alleged injuries.