# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01782-SCT

*SHIRLEY C. JOHNSON SARRIS, AS WIFE AND PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH BENEFICIARIES OF SHELBY V. JOHNSON, DECEASED*

*v.*

*DR. McKAMY SMITH AND JACKSON HEART CLINIC, PROFESSIONAL ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/1999 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN H. COCKE |
| ATTORNEYS FOR APPELLEES: | GEORGE QUINN EVANS |
| | CAROLYN ALLEEN McLAIN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED- 04/05/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/26/2001 |

### BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.

### COBB, JUSTICE, FOR THE COURT:

¶1. Shirley C. Johnson Sarris brought suit in the Hinds County Circuit Court against Dr. McKamy Smith and his employer, the Jackson Heart Clinic, P.A. (JHC),[1] alleging medical malpractice arising out of the death of Sarris's husband Shelby V. Johnson. After depositions and other discovery, Dr. Smith and JHC filed a motion for summary judgment asserting that Sarris's claim was barred by the statute of limitations.[2] The circuit court granted the motion and dismissed the case. Sarris has perfected a timely appeal and lists three issues, all of which regard the statute of limitations, as follows: (1) the trial court erred in granting summary judgment on the basis that the statute of limitations had run prior to the filing of the complaint in this action; (2) the trial court erred in ruling that the statute of limitations ran from the date of death rather than from the time Sarris knew or should have known of the negligent treatment of the decedent; and (3) the trial court erred in ruling that the statute of limitations was not tolled pending Sarris's efforts to obtain the medical records which were delayed by no fault of Sarris. Dr. Smith and JHC did not cross-appeal, but present additional arguments regarding the applicability of the statute of limitations. Thus the only issue before this Court is:

## I. DID THE LOWER COURT ERR IN HOLDING THAT THE APPELLANT'S CLAIM WAS BARRED BY THE STATUTE OF LIMITATIONS?

¶2. We find that the lower court did err in holding that Sarris's claim was barred by the statute of limitations, and we reverse and remand for further proceedings consistent with this opinion.

## FACTS

¶3. Shirley Johnson Sarris's late husband Shelby V. Johnson suffered the first of two heart attacks early on the morning of March 24, 1995. Sarris drove Johnson to St. Dominic Hospital in Jackson, where he was examined by emergency room physician Dr. Frank Koe and Dr. Raymond Grenfell, Jr. Later that day, Grenfell contacted Dr. McKamy Smith, a cardiologist, and requested that he examine Johnson. Grenfell testified that he relied on Smith's judgment as to whether Johnson should leave the hospital and whether follow-up care was necessary.

¶4. Dr. Smith admitted that he had an obligation to tell Johnson to seek follow-up care for possible cardiac problems and to put that recommendation on Johnson's hospital chart in order to communicate his opinion to Grenfell, neither of which he apparently did. Grenfell, in the absence of any indication that follow-up care was needed, dismissed Johnson from the hospital the next day, being March 25. On April 9, Johnson suffered a fatal heart attack in his home.

¶5. In June, Sarris attempted to gain access to Johnson's medical records, but hospital personnel informed her that the records were not yet on file. Sarris tried repeatedly over the following months to acquire Johnson's records, before they were finally produced in early January of 1996. In June of 1997, a medical expert employed by Sarris's attorney concluded that Johnson's death was caused by Smith's negligence. Sarris filed suit in December of 1997, within two years of her acquisition of the records, but well over two years after Johnson's death.

## STANDARD OF REVIEW

¶6. A trial court's grant of summary judgment is reviewed de novo, with this Court viewing the evidence in the light most favorable to the non-moving party. *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997). Furthermore, application of a statute of limitation is a question of law to which a de novo standard also applies. *ABC Mfg. Corp. v. Doyle*, 749 So.2d 43, 45 (Miss. 1999).

## ANALYSIS

### I. DID THE LOWER COURT ERR IN HOLDING THAT THE APPELLANT'S CLAIM WAS BARRED BY THE STATUTE OF LIMITATIONS?

¶7. At the time of Johnson's death, Mississippi's statute of limitations for medical malpractice actions stated in relevant part:

> Except as otherwise provided in this section, no claim in tort may be brought against a licensed physician . . . for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

Miss. Code. Ann. § 15-1-36(1)(1995).[(3)]

### A. Is the discovery rule applicable?

¶8. The parties do not dispute that Sarris filed suit more than two years after Johnson's death. Sarris argues, however, that the statute of limitations was tolled until she was able to secure her husband's medical records, since she exercised reasonable diligence in getting those records and could not reasonably be expected to know of Dr. Smith's and JHC's tortious conduct without the records. Smith and JHC argue

that the trial court was correct in holding that the statute of limitations began to run at Johnson's death, because Sarris was on notice that some negligent act might have occurred to cause that death. The resolution of this issue therefore turns on when Sarris "discovered" the wrongful conduct within the meaning of the statute.

¶9. This Court interpreted the discovery rule to mean that "the operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." *Smith v. Sanders,* 485 So.2d 1051, 1052 (Miss. 1986); *see also **Kilgore v. Barnes***, 508 So.2d 1042, 1043-56 (Miss. 1987)(holding statute of limitations did not bar malpractice suit over surgical needle left in lining of plaintiff's heart in 1974 but not discovered by plaintiff until 1982).

¶10. Smith and JHC argue that the question is when Sarris knew or should of known of (1) Johnson's death; (2) the cause of his death; and (3) the relationship between Johnson's death and Smith's purportedly negligent treatment of him. Smith and JHC further argue that Sarris knew all three things the day of Johnson's death. This Court disagrees. We believe that Sarris could not reasonably have known, until she reviewed the medical records, the causal relationship between Johnson's death and Smith's failure to inform either him or Dr. Grenfell that Johnson needed follow-up treatment.

### B. Does the statute of limitations for wrongful death automatically begin to run upon the date of the death?

¶11. Smith and JHC argue that this Court has "repeatedly" held that the discovery rule only applies to latent injuries and "steadfastly stated" that the statute of limitations for wrongful death begins to run on the date of the death. In support of these arguments, they cite three cases which they claim must be overruled if this Court allows Sarris's suit to proceed: ***Chamberlin v. City of Hernando***, 716 So.2d 596, 601 (Miss. 1998) (the discovery rule was inapplicable because the plaintiff was present at all times when negligent conduct allegedly occurred and because her own son-in-law was one of the paramedics who were present at the scene); *Gentry v. Wallace*, 606 So.2d 1117, 1119 (Miss. 1992) (notwithstanding the express terms of § 15-1-36(1), the statute of limitations for wrongful death could not begin to run prior to the death that is the basis for the suit); and *Sweeney v. Preston*, 642 So.2d 332, 333 (Miss. 1994) (tolling statute of limitations where plaintiff actually discovered defendant doctor's mistake more than twelve years after doctor negligently mistyped plaintiff's blood, resulting in death of two of plaintiff's children). We do not find the argument of Smith and JHC persuasive. Moreover, *Sweeney* stands squarely for the proposition that the statute of limitations can be tolled until a plaintiff gains actual knowledge of the defendant's negligent conduct even if that knowledge is not gained until years after the death that is the basis for the suit. *Sweeney* is directly on point. The discovery rule should have been applied to toll the statute of limitations, because while Sarris knew that her husband was dead, under the facts of this case, she could not reasonably have known that the death was the result of negligence.

### C. Was the statute of limitations tolled until Sarris could secure expert opinion supporting her claim?

¶12. Smith and JHC next argue that under the rule announced in ***United States v. Kubrick***, Sarris's claim accrued when she knew of the cause of her husband's death (a heart attack), not when she knew that Smith's acts might constitute medical malpractice. In that case, Kubrick brought suit against a Veteran's Administration hospital for negligently prescribing him neomycin treatments which resulted in hearing loss.

*United States v. Kubrick*, 444 U.S. 111, 113-14, 100 S.Ct. 352, 62 L. Ed.2d 250 (1979). We do not agree that *Kubrick* controls, as it is clearly distinguishable from the case at bar. Kubrick was a personal injury plaintiff who was present during all the purportedly negligent acts and had reason to know of negligent conduct long before bringing suit. Sarris, however, was not present for any of the purportedly negligent conduct and could not reasonably have known of Smith's alleged wrongdoing until she had access to the medical records. Furthermore, in *Kubrick*, the Supreme Court was interpreting the Federal Tort Claims Act and chose to interpret the statute of limitations narrowly because the Act represented a waiver of the federal government's sovereign immunity powers. *Id.* at 117. Those concerns are not implicated in this suit between private actors. Finally, Sarris is not in the same position as Kubrick. While a doctor suggested to Kubrick the strong possibility that neomycin caused his hearing loss years before he brought suit, no one was in a position to suggest to Sarris any possibility of wrongdoing with regard to Johnson's death until she could have the medical records reviewed.

¶13. Neither do we agree with Sarris's argument that the statute of limitations should <u>always</u> be tolled pending review of medical records. Sarris relies on a Fifth Circuit decision which held that a plaintiff could not reasonably have known of his doctors' negligent conduct until he reviewed his own medical records. *Waits v. United States,* 611 F.2d 550, 553 (5th Cir.1980). While *Waits* supports Sarris's position, we reject a bright line rule that the statute of limitations can never start to run until the plaintiff has access to medical records. Instead, the statute should begin to run when the plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent. This is consistent with the *Waits* court's position that "[t]he question of what knowledge should put a claimant on notice of the existence of a viable claim is not soluble by any precise formula." *Id.* at 552. Some plaintiffs might need medical records in order to know of negligent conduct, and yet might still be barred if they failed to diligently seek those records. Others might gain actual knowledge of negligent conduct through personal observation or other means; such plaintiffs are not entitled to wait until they have medical records before the statute begins to run. *Compare **Barnes v. Singing River Hosp.**,* 733 So.2d 199, 206 (Miss. 1999)(statute of limitations tolled until medical expert notifies plaintiffs of possible negligence resulting in double amputation), *and **Robinson v. Singing River Hosp.**,* 732 So.2d 204,208 (Miss. 1999)(statute of limitations runs from date of injury where plaintiff suffers second degree burns that should have reasonably led to suspicions of negligence even without expert medical diagnosis).

¶14. In this case, Sarris was not present when Johnson was examined by Smith, and she did not even know Smith's name until she received the record. The negligent conduct that forms the basis of the suit was Smith's failure to interpret properly Johnson's test results or to communicate the results properly to Johnson and Grenfell, a failure that Sarris could not reasonably have known until she acquired Johnson's medical records. Sarris was reasonably diligent in attempting to secure the records, and the hospital's delay in providing those records should not be counted against her.

## CONCLUSION

¶15. Sarris could not reasonably have known of the nature of Smith's acts or their alleged causal connection with the death of Johnson without access to Johnson's medical records. It is undisputed that the hospital was for some reason unable to provide those records until nine months after Johnson's death. Under the specific facts of this case, the statute of limitations was tolled for that nine-month period, bringing the commencement of Sarris's suit within the two-year statutory period.

¶16. We do not establish a bright line rule tolling the statute of limitations in all cases until potential plaintiffs can get medical records. Application of the discovery rule is a fact-intensive process. Under the facts of this case, we believe that Sarris could not have discovered the negligent acts until she received the medical records. Therefore, we reverse the circuit court's grant of summary judgment and remand this case to the circuit court for proceedings consistent with this opinion.

¶17. **REVERSED AND REMANDED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. Another doctor, Dr. Raymond Grenfell, Jr., was also a defendant in the suit, but was dismissed by consent of the parties since he had relied on the expertise of Dr. Smith.

2. Smith and JHC also asserted that Sarris had failed to make her prima facie case against them because her only expert witness was a not a cardiologist. The trial court apparently did not rule on that issue, and the parties agree that it is not currently before this Court. The statute of limitations question is the only issue raised on appeal.

3. The statute has since been amended, Miss. Code Ann. § 15-1-36 (Supp. 2000), but the changes did not go into effect until 1998, after the death of Johnson and the filing of Sarris's complaint.