**Raymond HUGHES, Appellant,**

v.

**UNITED STATES of America.**

No. 00–3606.

United States Court of Appeals, Third Circuit.

Argued July 19, 2001.

Aug. 29, 2001.

---

Gustine J. Pelagatti (Argued), Gustine J. Pelagatti & Associates, Philadelphia, PA, Counsel for Appellant.

Nuriye C. Uygur (Argued), Office of United States Attorney, Philadelphia, PA, Counsel for Appellee.

Before SCIRICA, RENDELL and ROSENN, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

ROSENN, Circuit Judge.

Determining when the statute of limitations begins to run in a case is sometimes difficult, especially in cases claiming medical malpractice. The plaintiff, Raymond Hughes, was admitted to the Veterans Administration Medical Center (VAMC) in Charleston, South Carolina, on April 15, 1997, for a cardiac catheterization and a subsequent coronary bypass. In preparation for the surgery, physicians administered heparin, a blood thinner. The administration of heparin was almost continuous from April 16 to April 23, 1997. After the operation, gangrene developed in Hughes's extremities and, as a result, his doctors amputated them to prevent the gangrene from spreading. Hughes filed an administrative tort claim with the Veterans Administration. On December 16, 1999, the VA denied the claim and Hughes sued the United States on June 16, 2000 under the Federal Tort Claims Act, 28 U.S.C. § 1346.

The Government moved to dismiss the suit for lack of subject matter jurisdiction. The District Court granted the Government's motion and dismissed the action. The plaintiff timely appealed. We vacate and remand.

## I.

On April 15, 1997, Hughes, a veteran, appeared at the Department of Veterans Affairs Medical Center in Charleston, South Carolina for treatment of neck pain. While at the hospital, the pain spread to his chest. Hughes then underwent cardiac catheterization, which revealed coronary

artery disease. On the same day, VAMC personnel administered heparin to Hughes in preparation for coronary artery bypass surgery. The hospital performed the surgery on April 18, 1997. Hughes was hooked up to a heparin drip almost continuously for a week. During that time, his limbs grew cold and black with gangrene.

Hughes was heavily sedated and unconscious from April 17 to June 4, 1997. On May 13, 1997, VAMC personnel amputated his right leg above the knee because it had filled with gangrene. On May 20, both of Hughes's hands were amputated due to gangrene. Two days later, surgeons amputated his left leg below the knee. .

On June 4, 1997, Hughes regained consciousness and discovered that he was a quadruple amputee. The doctors at the VAMC informed him that he had had a heparin-induced allergic reaction which caused the gangrene, leaving them no choice but to amputate. His reaction to heparin is known as heparin-induced thrombocytopenia with thrombosis ("HITT"). Hughes was not informed that, had the HITT been timely diagnosed, it could have been treated and arrested with anticoagulants.

The hospital released Hughes on July 23, 1997. In February 1999, he filed a claim for benefits available under 38 U.S.C. § 1151[1] to veterans disabled by medical treatment. When a social worker from the Veterans Administration questioned him, Hughes allegedly said that he did not wish to sue the Government.

On April 12, 1999, Hughes consulted attorney Robert D. Fogel of Charleston, South Carolina. Fogel requested Hughes's medical records from the VAMC on May 24, 1999. In the letter requesting such records, Fogel advised the VAMC that time was of the essence because Hughes's "potential claim against the government would expire on or about June 25 [1999]." On June 10, 1999, Fogel received Hughes's records, but declined to accept his case. Fogel never filed an administrative tort claim on Hughes's behalf to protect his claim.

Hughes retained his current attorney in December 1999. His attorney promptly filed a Notice of Claim with the VA. The VA rejected Hughes's claim on July 6, 2000. Ten days later, Hughes's attorney filed a complaint against the United States pursuant to the Federal Tort Claims Act ("FTCA"). Hughes sought damages for the failure of VAMC personnel to diagnose and treat his heparin-induced allergic reaction, which resulted in the amputation of his legs and hands. (Complt. at Para. 27(c)—(e)). The United States filed a motion to dismiss the complaint for lack of subject matter jurisdiction. The District Court granted the motion and dismissed the action pursuant to Fed.R.Civ.P. 12(b)(1).

## II.

Statutes of limitations "are found and approved in all systems of enlightened jurisprudence." *Wood v. Carpenter*, 101

---

1. Section 1151 grants disability benefits to veterans as if such disability were service related, provided the disability:

was not the result of the veteran's willful misconduct and

(1) the disability . . . was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility . . . and the proximate cause of the disability . . . was

(A) carelessness, negligence, lack of proper skill, error in judgment . . . on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or

(B) an event not reasonably foreseeable . . .

38 U.S.C. S 1151(c).

U.S. 135, 139, 25 L.Ed. 807 (1879). Although they provide what legislatures consider a reasonable period for plaintiffs to present their claims, "they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

In enacting the Tort Claims Act, Congress generously waived the immunity of the United States. A condition of that waiver is that suits be filed within the statutory time limitation. 28 U.S.C. § 2401(b), enacted by Congress, specifically requires that tort claims be brought against the Government within two years of the accrual of the cause of action. Its obvious purpose is to encourage the prompt presentation of all claims. *See id.* "[W]e should not take it upon ourselves to extend the waiver beyond that which the Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *Kubrick,* 444 U.S. at 117–118, 100 S.Ct. 352 (citations omitted).

On appeal, Hughes contends that the statute of limitations was not activated by his awareness of his injury, but was tolled until he became aware of the act or omission which caused the injury. He further asserts that he relied on the VA physicians' explanation of the cause of his injuries and therefore had no reason to know of their failure to treat his reaction. In effect, his argument is that giving him the heparin did not cause his injury; rather, it was caused by the failure of the treating physicians timely to apply anticoagulants and other appropriate treatment to combat the HITT. He asserts that he was not made aware of this cause of his injury until Attorney Robert Fogel had obtained and reviewed his medical records on June 10, 1999. Prior to that date, Hughes claims to have accepted the doctors' explanation that his injuries were the direct result of his unforeseeable allergic reaction. Thus, Hughes argues that the statute of limitations was equitably tolled until he received his hospital records, and that he had two years thereafter to file his claim. On the other hand, the Government argues that Hughes had all relevant information about his injury and its cause when he was discharged on July 23, 1997, the date it claims the statute of limitations began to run.

■ In a medical malpractice action under the FTCA, the statute of limitations is tolled until the putative plaintiff possesses facts which would enable "a reasonable person to discover the alleged malpractice." *Barren by Barren v. United States,* 839 F.2d 987, 991 (3d Cir.1988). The District Court dismissed this action for lack of subject matter jurisdiction, holding that, in June 1997, when Hughes awoke from his coma in the hospital and realized he was an amputee, he possessed sufficient facts to place a reasonable person on notice of medical malpractice. The District Court concluded that the plaintiff not only knew of his injury, but also knew of its cause, the unknown allergy, in June–July 1997. The court held that *Kubrick* "places an affirmative burden on a plaintiff armed with the predicate facts to obtain medical advice and pursue the claim." (D.C. op. at 10–11).

In *Kubrick,* the Supreme Court held that the statute of limitations barred the action because the plaintiff was aware of both his injury and the facts surrounding its causation. *See Kubrick,* 444 U.S. at 122, 100 S.Ct. 352. The Court reasoned that, once the plaintiff knows "the critical facts that he has been hurt and who has inflicted the injury," he can seek medical and legal advice to determine whether the medical care he received was substandard

and whether he has a viable cause of action for negligence. *Id.*

Applying *Kubrick* to the facts before it, the District Court found that Hughes became aware of his injury (the amputations) when he awoke from his coma. It also found that Hughes learned the cause of his injury while still in the hospital, when his physician informed him that he had had an allergic reaction to the heparin which ultimately necessitated his amputations. Concluding that this information would have led a reasonable person to suspect malpractice, the District Court held that, once he was in possession of these facts, *Kubrick* charged Hughes with a duty to promptly investigate his claim or risk losing it.

■ The case before us differs from *Kubrick* in a crucial respect. In *Kubrick*, the plaintiff alleged that the administration of a particular drug, which caused him to lose his hearing, was negligent. *Id.* at 114, 100 S.Ct. 352. Hughes, by contrast, does not claim that his injury resulted from the administering of the heparin by the VA doctors. Rather, he alleges that the loss of his limbs was caused by the VA doctors' failure to monitor and treat his reaction to the heparin. Hughes was not informed, when he regained consciousness in the hospital, that his reaction could have been treated. Therefore, as a reasonable lay person, he did not know the facts surrounding the causation of his injuries until a considerable time after his hospital discharge, when he learned that the doctors had failed timely to apply anticoagulants or to perform other appropriate medical procedures then available. He was told only that he had had an allergic reaction to heparin which caused the gangrene that resulted in the amputations.

The District Court believed that Hughes's "reliance on his doctors' assurances that because of his previously unknown allergy, the amputations were un-

avoidable" was sufficient to make him aware "not only of his injury but also its cause." We disagree. He was not provided any information that should have led him to believe that it was the failure to treat timely the allergic reaction to the heparin that caused the formation of gangrene. On the contrary, he was led to believe that the formation of the gangrene was a natural, albeit unexpected, allergic reaction to the heparin dosage.

*Kubrick*'s holding "cannot be applied mechanically to cases involving the failure to diagnose, treat, or warn." *Augustine v. United States,* 704 F.2d 1074, 1078 (9th Cir.1983). In *Augustine*, the plaintiff argued that the failure of Air Force dentists to diagnose and treat a bump on his palate resulted in the progression of the bump from a minor condition to an incurable cancer. *Id.* at 1076. The Court held that the progression of the disease, rather than the disease itself, was the injury and that Augustine's cause of action did not accrue until a reasonable person would have "discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition." *Id.* at 1078 (citation omitted). The court distinguished *Kubrick*, in which affirmative treatment administered by the doctors "inflicted clearly identifiable injuries on their patients, *i.e.,* loss of hearing and paralysis" from cases where the injury is a result of the failure of the doctors "to diagnose and treat" the patient's condition or warn him of its seriousness. *Id.*

When a physician's failure to diagnose, treat, or warn a patient results in the development of a more serious medical problem than that which previously existed, identification of both the injury and its cause may be more difficult for a patient than if affirmative conduct by a doctor inflicts a new injury. Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-

existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).

*Id.* (emphasis in original).

The court's analysis in *Augustine* applies to this case. Hughes's injuries occurred not solely because of the heparin-induced reaction, which could easily have been halted, but because the VA doctors failed to diagnose and treat his allergic reaction. As in Augustine, "[t]he issue of accrual in this case thus depends upon when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating condition." *Id.* (citation omitted). *See also In re Swine Flu Prods. Liab. Litig.,* 764 F.2d 637, 640 (9th Cir. 1985). We do not know these critical facts in this case; they are not a matter of record. We have no information in this record as to when Hughes learned or should have learned that the doctors could have treated him, but failed to do so, with anticoagulants which would have arrested the HITT and saved his limbs.

In *Drazan v. United States,* the plaintiff in a wrongful death action was told that lung cancer had caused her husband's sudden death. 762 F.2d 56, 58 (7th Cir.1985). However, she was not told that the VA doctors who treated her husband had failed to diagnose his condition a year earlier when an x-ray of his chest revealed a small tumor. *See id.* The court held that the statute of limitations on the plaintiff's wrongful death action had not begun to run until she learned of the iatrogenic [2] cause of her husband's death. *See id.* at 59. The court stated that "[w]hen there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause [failure to diagnose], not just of the other cause [lung cancer]." *Id.*

Finally, in *Waits v. United States,* 611 F.2d 550 (5th Cir.1980), the Court of Appeals for the Fifth Circuit was faced with facts startlingly similar to those before us. In that case, VA doctors treated the plaintiff's infected leg with an antibiotic that proved to be ineffective. *See id.* at 551. The infection worsened and the plaintiff's leg had to be amputated. *See id.* The plaintiff later learned that his leg could have been saved if the doctors had monitored his condition and administered. an alternative antibiotic. *See id.* at 553. The court rejected the Government's argument that the plaintiff's cause of action accrued when he learned that his leg had been amputated due to the infection. *See id.* Instead, the district court held that the statute was tolled until the plaintiff. learned that the Government's failure to treat properly the infection had played a role in causing his injury. *See id.* The court stated that "[i]t is not enough to

---

**2.** Iatrogenic is a term which "now applies to any adverse condition in a patient occurring as a result of treatment by a physician or surgeon, especially to infections incurred by the patient during the course of his treatment." Dorland's Illustrated Medical Dictionary, 27th ed.

trigger the statute of limitations that the claimant is aware of his injury if he is unaware of the *act or omission* which caused the injury." *Id.* at 552 (emphasis added).

In the instant case, the hospital informed Hughes that a heparin-induced allergic reaction caused his injury. This may have been one cause, but the iatrogenic cause, which Hughes had no reason to suspect at the time of his discharge, was the failure of the VA doctors to arrest the development of gangrene by appropriate medical treatment.

### III.

In conclusion, the same rebuttable presumption of equitable tolling applicable to private defendants applies to suits against the United States. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Thus, the FTCA's statute of limitations is not jurisdictional. Failure to comply with the statute is "an affirmative defense which the defendant has the burden of establishing. *See* Fed.R.Civ.P. 8(c)." *Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir.1991). *Accord, Oropallo v. United States*, 994 F.2d 25, 29 n. 4 (1st Cir.1993). In this procedural posture, it is the. defendant's burden to establish the date when the plaintiff knew, or reasonably should have known, of the cause of his injury.

Although the District Court purported to resolve the motion under § 12(b)(1), it considered memoranda, affidavits and exhibits submitted by both parties. The court, therefore, should have applied summary judgment standards in deciding whether to grant or deny the Government's motion. *See In re Swine Flu Prods. Liab. Litig.*, 764 F.2d at 640–42 ("whether [appellant] acted reasonably in failing to make additional inquiries is a genuine issue of material fact.") Relevant

facts remaining in dispute, the court thus improperly granted the Government's motion. *See Augustine*, 704 F.2d at 1079 (citation omitted). The documents submitted demonstrate a material conflict as to the central issues in the case. In such circumstances, a grant of summary judgment would have been improper. The District Court did not conduct a requisite hearing on the merits to resolve the basic factual issue, the cause of the injury. If, after proper consideration of the evidence pertaining to when plaintiff became or reasonably should have become aware of the cause of his injury, the District Court finds that Hughes's claim against the United States accrued more than two years before he instituted his suit, it may dismiss the case.

The order of the District Court dismissing the case will be vacated and the case remanded for further proceedings not inconsistent with this opinion. Costs to be taxed against the appellee.