Leah WILDER

v.

**UNITED STATES of America, Covenant House, Inc., Covenant House Health Services, Inc. and Dr. Trinka Luzinski**

No. CIV.A. 00–CV–6201.

United States District Court, E.D. Pennsylvania.

Nov. 6, 2002.

650

Alan M. Herman, Zarwin, Baum, DeVito, Kaplan, O'Donnell & Schaer, P.C., Philadelphia, PA, for Plaintiff.

Nadine M. Overton, U.S. Atty's Office, Philadelphia, PA, for U.S.

Sharon Caffrey, Jennifer McGlinn, Duane Morris, LLP, Philadelphia, PA, for Covenant House, Inc., Health Services.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motion now pending before this Court, Defendants seek the entry of summary judgment in their favor on all of the counts in Plaintiff's Complaint. For the reasons set forth below, the motion shall be granted.

### Factual Background

In her complaint, Plaintiff Leah Wilder alleges that on or about November 10, 1990, she consulted Defendant Dr. Trinka Luzinski at Covenant House Health Services for a gynecologic exam and was referred for an HIV virus test. On November 19, 1990, Plaintiff was advised by "Dr. Luzinski and/or staff, agents of Defendants Covenant House" (sic) that she had tested positive for the HIV virus, "which is the virus causing AIDS, an incurable, fatal disease." (Complaint, ¶ s13–14). Plaintiff alleges that in reliance upon this diagnosis, she subsequently terminated four pregnancies in April, 1992, May, 1996, December, 1997 and December, 1997 to avoid giving birth to an HIV-infected child.

In March, 1998, the plaintiff who was again pregnant, underwent a second test for the HIV virus at Pennsylvania Hospital and discovered that contrary to the defendants' earlier notification, she did not have the HIV virus and did not have AIDS. Plaintiff thereafter commenced this action in state court on December 10, 1999 contending that she has suffered "considera-

ble anguish, humiliation, limitation and restriction of [her] usual activities, pursuits, lost earnings and earning capacity" and "a chronic neurological and physical impairment to her body," as a result of the defendants' actions in misdiagnosing her and seeking to recover damages for the defendants' alleged negligence and negligent and intentional infliction of emotional distress. Defendants now move for the entry of judgment in their favor as a matter of law on two bases: (1) that Ms. Wilder's claims are time-barred by Pennsylvania's two-year statute of limitations; and (2) that given that Pennsylvania does not recognize a cause of action for "fear of AIDS," Plaintiff·has failed to state a claim upon which relief may be granted.

### Standards Governing Motions for Summary Judgment

The underlying purpose of a motion for summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). According to Fed.R.Civ.P. 56(c), summary judgment is properly rendered:

> "...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland*, 989 F.2d 635, 638 (3rd Cir.1993); *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125–126 (3rd Cir.1994); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa.1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex Corp. v. Catrett, supra*, the Supreme Court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). This does not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose its own witnesses. Rather, Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list

that one would normally expect the non-moving party to make the required showing that a genuine issue of material fact exists. *Id.See Also, Morgan v. Havir Manufacturing Co.,* 887 F.Supp. 759 (E.D.Pa.1994); *McGrath v. City of Philadelphia,* 864 F.Supp. 466, 472–473 (E.D.Pa. 1994).

## Discussion

### A. Statute of Limitations

■ Under 42 Pa.C.S.A. § 5524(2), (7), an action to recover damages for injuries under a theory of negligence must be commenced within two years from the date of the purportedly negligent act. Judge Ludwig, in *In re Latex Gloves Products Liability Litigation,* 152 F.Supp.2d 667 (E.D.Pa.2001) succinctly summarized the "discovery rule" under Pennsylvania law:

> Ordinarily, the limitations period "begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). However, an exception known as the discovery rule "arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." *Id.* at 85, 468 A.2d at 471. "Where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992) (citation omitted). "Conversely, if the existence of the injury and cause thereof are reasonably ascertainable within the two-year statutory period, the discovery rule does not apply and no tolling occurs." *Baumgart v. Keene*

*Building Products Corp.,* 542 Pa. 194, 199, 666 A.2d 238, 240 (1995).

Defendants here argue that the plaintiff's cause of action began to accrue when she knew, or should have known through additional inquiry, that she was not HIV positive. According to the defendants, this occurred as early as March of 1991 and again in April and September of 1997, when she was advised that her blood counts were high and inconsistent with an HIV-positive diagnosis and that she should see an infectious disease specialist for further testing. While we would agree with the defendants that, in hindsight, the plaintiff *should* have consulted an infectious disease specialist or perhaps requested further follow-up, there is also evidence that the defendants continued to treat and counsel her about her HIV-positive status through the years, including advising her to undergo a tubal ligation to avoid conceiving an HIV-positive child. This evidence, we believe, warrants submission of the issue of whether the statute of limitations was effectively tolled until March, 1998 when Ms. Wilder was informed by a physician at Pennsylvania Hospital that she did not have the virus which causes AIDS. Accordingly, the defendants' motion for summary judgment on the basis of the statute of limitations is denied.

### B. "Fear of AIDS"

■ Defendants alternatively argue that they are entitled to judgment in their favor as a matter of law given that Pennsylvania law does not allow recovery for fear of contracting AIDS in the absence of actual exposure to the disease. We agree.

Although the Pennsylvania Supreme Court has yet to address the issue, the Pennsylvania Superior Court has repeatedly held that in order to recover for the fear of contracting a disease, a plaintiff must show that there has been some actual

exposure to the disease. *Shumosky v. Lutheran Welfare Services of Northeastern Pennsylvania, Inc.,* 784 A.2d 196, 202 (Pa.Super.2001); *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25, 29 (Pa.Super.2000); *Lubowitz v. Albert Einstein Medical Center,* 424 Pa.Super. 468, 471, 623 A.2d 3, 5 (1993). *See Also: Rothschild v. Tower Air, Inc.,* Civ. A. No. 94–2656, 1995 U.S. Dist. LEXIS 2078 (E.D.Pa. Feb.22, 1995); *Griffin v. American Red Cross,* Civ. A. No. 93–5924, 1994 WL 675105, 1994 U.S. Dist. LEXIS 16838 (E.D.Pa. Nov.28, 1994); *Burk v. Sage Products, Inc.,* 747 F.Supp. 285, 287 (E.D.Pa.1990). The plaintiff here has adduced no evidence whatsoever that she was ever actually exposed to the AIDS virus. Consequently, to the extent that the damages which Ms. Wilder seeks to recover are for her fear of AIDS and fear of passing the virus to her unborn children, summary judgment must be entered in favor of the defendants.

▪ Plaintiff, however, attempts to distinguish this case by arguing that her causes of action are for negligence in rendering medical care and negligent and intentional infliction of emotional distress and not merely for fear of AIDS. These actions also fail.

▪ Although the Pennsylvania Supreme Court has never expressly recognized the tort of intentional infliction of emotional distress, the Pennsylvania Superior Court has held that a claim for such a tort will lie where "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Atamian v. Assadzadeh,* Civ. A. No. 00–3182, 2002 WL 538977, 2002 U.S. Dist. LEXIS 6269 (E.D.Pa. Apr. 9, 2002), quoting *Hunger v. Grand Cent. Sanitation,* 447 Pa.Super. 575, 670 A.2d 173, 177 (1996) and Restatement (Second) of Torts, § 46. *See Also: Kazatsky v.*

*King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). In determining conduct that is "extreme and outrageous," it must be "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." In other words, the case must be "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous!" *Id.,* citing *Kazatsky,* 527 A.2d at 994.

Moreover, the Pennsylvania Supreme Court has further held "that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky,* 515 Pa. at 197, 527 A.2d at 995.

The actions complained of here can in no way be categorized as outrageous. Although it is indeed unfortunate that the plaintiff was advised that she was HIV positive when she was not, there is nothing in this record to suggest that the defendants intentionally deceived her or that they relayed this information to her in an atrocious or offensive manner. Rather, it appears that the defendants repeatedly urged Plaintiff to seek another opinion and care from someone specializing in infectious diseases but that the plaintiff refused to do so because she "was comfortable" with the people at Covenant House and because she was fearful of learning that her AIDS had progressed. We therefore find that judgment is properly entered in favor of the defendants on Plaintiff's claim for intentional infliction of emotional distress.

▪ To recover for negligent infliction of emotional distress, a plaintiff must prove at least one of the following four

elements: (1) that the defendant had a contractual or fiduciary duty toward him; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative. *Doe v. Philadelphia Community Health Alternatives*, 745 A.2d at 27. A plaintiff must also establish the elements of a negligence claim, i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage. *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 868 (Pa.Super.2000), citing, *inter alia, Martin v. Evans*, 551 Pa. 496, 502, 711 A.2d 458, 461 (1998); *Atamian, supra.* To satisfy the requirement of causation, the complainant must demonstrate that the breach was both the proximate and the actual cause of the injury. *Reilly v. Tiergarten, Inc.*, 430 Pa.Super. 10, 633 A.2d 208, 210 (1993). While actual and proximate causation are often confused, a finding of proximate cause turns upon "whether the policy of the law will extend the responsibility for the negligent conduct to the consequences which have in fact occurred. The term 'proximate cause' is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. *Brown, supra,* quoting *Bell v. Irace*, 422 Pa.Super. 298, 619 A.2d 365, 367 (1993). Proximate cause is primarily a problem of law and it is the court's responsibility to evaluate the alleged facts and refuse to find an actor's conduct the legal cause of harm when it appears to the court highly extraordinary that the actor's conduct could have brought about the harm. Thus, proximate cause must be determined by the judge and it must be established before the question of actual cause is put to the jury. *Id.,*

citing *Reilly*, 633 A.2d at 210. Stated otherwise, Pennsylvania law will not support a finding of proximate cause if the negligence, if any, was so remote that as a matter of law, the defendant cannot be held legally responsible for the harm which subsequently occurred. *Brown*, 760 A.2d at 869. The test for proximate causation is whether the defendant's acts or omissions were a "substantial factor" in bringing about the plaintiff's harm. *First v. Zem Zem Temple*, 454 Pa.Super. 548, 686 A.2d 18, 21 (1996).

Section 433 of the Restatement of Torts, Second (1965) sets forth a method of determining whether negligent conduct is a substantial factor in producing injury. It provides:

**§ 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm**

The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;

(c) lapse of time.

*Vattimo v. Lower Bucks Hospital*, 502 Pa. 241, 465 A.2d 1231 (1983).

In application of the foregoing, we find that while the defendants did owe Plaintiff the duty of due care and the duty

to provide medical care in accordance with prevailing medical standards, there is no evidence that she suffered any impact, was within the zone of any danger of immediate and substantial harm or that she contemporaneously sensorily perceived an injury to a close relative as a result of the defendants' misdiagnosis in November, 1990. Moreover, given that she was not pregnant at the time she learned of her HIV status in November, 1990 and that at least two years elapsed between the time of Plaintiff's misdiagnosis and her first abortion, it is clear that her damages were caused by factors other than the defendants' alleged malpractice and were clearly not contemporaneous with the defendants' conduct.

Finally, Ms. Wilder has produced no medical or psychiatric evidence whatsoever to support her claim that she suffered any emotional distress as a consequence of having been advised she was HIV positive. While we do not dispute her testimony that she was very upset and "cried and cried," Pennsylvania law is clear that medical evidence is required before such a claim may be submitted to a jury. *See, e.g., Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979) In as much as we cannot find that the defendants' conduct was a substantial factor in causing Plaintiff's damages and in the absence of corroborating medical evidence of emotional distress, we must grant the defendant's motion for summary judgment in its entirety.

An order follows.

### ORDER

AND NOW, this 6th day of November, 2002, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and Summary Judgment is entered in favor of the defendants and against the plaintiff for the reasons set forth in the preceding Memorandum Opinion.