**Jose CALLE and Luz Calle, Plaintiffs,**

v.

**YORK HOSPITAL, et al., Defendants.**

**Civil Action No. 1:CV–01–1548.**

United States District Court,
M.D. Pennsylvania.

Nov. 27, 2002.

---

Lee C. Swartz, Tucker, Arensberg & Swartz, Harrisburg, PA, Lee Friedland,

Aida M. Landa, Downw & Associates, P.A., Coral Gables, FL, for Plaintiffs.

Christopher A. Stump, Todd R. Bartos, Stevens & Lee, P.C., Lancaster, PA, Peter J. Curry, Thomas, Thomas & Hafer, Derek D. Bahl, Harrisburg, PA, for Defendants.

## MEMORANDUM

CONNER, District Judge.

Before the court is a motion for summary judgment (doc. 33) filed by defendants Cardiac Diagnostic Associates and Dr. Jay Nicholson ("Nicholson defendants"). The motion has been fully briefed, oral argument on the motion was conducted on September 24, 2002,[1] and the motion is now ripe for disposition.

### I. *Factual Background*

This is a medical malpractice case. Plaintiffs' claims against the Nicholson defendants arise out of their allegedly negligent treatment of Plaintiff Jose Calle's myocardial infarction on August 14, 1999. (Doc. 35, ¶ 27). The following material facts are undisputed.[2]

Plaintiffs Jose and Luz Calle commenced the above-captioned medical malpractice action on August 13, 2001 by filing a complaint against York Hospital and Dr. Boglarka Szabo. In their original complaint, plaintiffs contended that York Hospital and Dr. Szabo were negligent in their care and treatment of Mr. Calle on August 14, 1999. Plaintiffs filed an amended complaint on November 28, 2001, in which they dropped Dr. Szabo as a defendant and added the Nicholson defendants. In their amended complaint, plaintiffs allege that the Nicholson defendants were negligent in their care and treatment of Mr. Calle on August 14, 1999 in the following respects:

(1) failing to use anti-coagulant drug therapy;

(2) failing to refer Mr. Calle to a catheterization lab; and

(3) failing to perform an angioplasty.

(Doc. 15, ¶¶ 21, 23 and 27). The allegations of negligence contained in plaintiffs' November 28, 2001 amended complaint arise out of the same set of operative facts as the allegations of negligence contained in plaintiffs' initial (August 13, 2001) complaint.

Dr. Nicholson's role in the care and treatment of Mr. Calle began on August 14, 1999 when he reviewed Mr. Calle's electrocardiogram. *See* doc 49, exhibit A, Deposition of Jay Nicholson, M.D., pp. 33–35 ("Nicholson Dep."). On August 14, 1999, Dr. Nicholson also discussed the management of Mr. Calle's care with Dr. Kathleen B. Kay. *See* doc. 51, exhibit C, History & Physical Examination/Progress Notes of Kathleen B. Kay, M.D., pg. 2. On August 15, 1999, Dr. Nicholson saw Mr. Calle for the first time, whereupon he obtained Mr. Calle's consent for a heart catheterization. Nicholson Dep. at 55–59. On August 16, 1999, Dr. Nicholson performed Mr. Calle's heart catheterization and, thereafter, discussed the results of the procedure with Mr. Calle. *Id.* at 74–75.

On August 16, 1999, following his heart catheterization, Mr. Calle made inquiries about the failure to perform an angioplasty and when he would undergo an angio-

---

1. Counsel for plaintiffs and counsel for moving defendants are to be commended for their respective oral presentations, which were clear and concise.

2. The court notes that plaintiffs elected to forego a response to the Nicholson defendants' statement of material facts. *See* L.R. 56.1. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

plasty. *See* doc. 49, exhibit A, Deposition of Jose Calle, Part I, pp. 39–40 ("J. Calle Dep. I"). At the time of his inquiry, Mr. Calle was under the impression that Dr. Nicholson did not perform an angioplasty on him because Mr. Calle was an inmate. *See id.* at 39–40, 49–50 and doc. 49, exhibit A, Deposition of Jose Calle, Part II, pg. 25 ("J. Calle Dep. II").

In September 1999, while in prison in Kentucky, Mr. Calle began treating with Dr. David C. Booth. J. Calle Dep. I at 43–44. Mr. Calle recalls that Dr. Booth asked him in September 1999 why the doctors at York Hospital did not "do something" for him. *Id.* Dr. Booth's September 24, 1999 consultation report, which Dr. Booth read into the record at his deposition, states in pertinent part as follows: "The patient did not receive reperfusion treatment ... should have received reperfusion treatment on August 14, 1999...."[3] Doc. 49, Exhibit A, Deposition of David C. Booth, M.D., pp. 16–17, 19 ("Booth Dep.").

In October 1999, Mr. Calle began treating with Dr. Booth's colleague, Dr. Pedro Moreno. *See* doc. 36, exhibit K, Deposition of Pedro Moreno, M.D., pp. 21–22, 37 ("Moreno Dep."). Mr. Calle's case was presented at an October 1999 catheterization conference attended by Dr. Moreno where it was decided that Mr. Calle should be scheduled for elective angioplasty in January 2000. *Id.* at 22–42. Dr. Moreno, who speaks Spanish, developed a relationship with Mr. Calle's family. *Id.* at 22. On January 28, 2000, Dr. Moreno performed an unsuccessful angioplasty on Mr. Calle. *Id.* at 44, 50–51. Mr. Calle recalls Dr. Moreno explaining on January 28, 2000 that the angioplasty was unsuccessful because "it wasn't done sooner." J. Calle Dep. I at 44.

Plaintiff was "awakened" to the possibility that his injury was caused by York Hospital and his doctors on January 28, 2000. *See* doc. 48, p. 13 ("Mr. Calle neither knew nor should have known of his injury prior to his awakening with Dr. Moreno on January 28, 2000.").

## II. *Legal Standard*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact that will affect the outcome of the case under the governing law is "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party." *Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D.Pa. 1992) (citing *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988)).

At the summary judgment stage, a judge does not weigh the evidence for the truth of the matter, but simply determines "whether there is a genuine issue for trial." *Schnall v. Amboy Nat. Bank*, 279 F.3d 205, 209 (3d Cir.2002) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Once the moving party has shown that there is an absence of evidence to support

---

**3.** Reperfusion is the "restoration of blood flow to an area or part that was temporarily ischemic." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1557 (29th ed.2000). Angioplasty is a form of reperfusion treatment.

the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial.'" *Schiazza v. Zoning Hearing Bd., Fairview Tp., York County, Pennsylvania*, 168 F.Supp.2d 361, 365 (M.D.Pa.2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–323, 106 S.Ct. 2548.

### III. *Discussion*

#### A. The Pennsylvania "Discovery Rule"

The court applies state substantive law when federal jurisdiction is based on diversity of citizenship. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 79–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 474 (3d Cir.2001). A state statute of limitations is considered substantive law within the ambit of *Erie Railroad*. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 552 (3d Cir. 1985) ("statutes of limitations are considered substantive"). Furthermore, "state tolling principles are generally to be used by a federal court when it is applying a state limitations period." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir.1991) (quoting *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 45 (3d Cir.1990)).

The parties agree that Pennsylvania law governs this dispute. In Pennsylvania, the statute of limitations for a medical malpractice claim is two years. 42 Pa.C.S.A. § 5524(2). The limitation period begins to run when the cause of action accrues—i.e. generally, when the injury occurs. *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983). Plaintiffs allege that defendants committed medical malpractice on August 14, 1999. Thus, the statute of limitations on plaintiffs' medical malpractice claims expired on August 14, 2001, unless tolled by the "discovery rule." This tolling of the limitations period occurs only when an injury is unknown and not reasonably discoverable. *Pocono Int'l Raceway*, 468 A.2d at 471 ("The 'discovery rule' ... arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause.") (emphasis in original).

The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997). "[T]he very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." *Id.*, 701 A.2d at 170.

The parties disagree as to the precise contours of the discovery rule in Pennsylvania. The Nicholson defendants argue that the discovery rule tolls the statute of limitations only when the injury is unknown and not reasonably discoverable *within the original statutory period after the injury* (here, within two years of the alleged malpractice, or on or before August 14, 2001). Thus, defendants argue, the discovery rule is inapplicable and the claims against the Nicholson defendants

are time barred because plaintiffs knew of the injury before August 14, 2001.[4]

Plaintiffs contend that the discovery rule has evolved into an equitable rule which tolls the statute of limitations until the injured party knows or reasonably should know about the injury, regardless of whether the discovery is made within the initial limitations period or beyond. Plaintiffs assert that they did not know of Mr. Calle's injuries, and reasonably could not have known of them, until January 28, 2000. (Doc. 48, pp. 5, 13). Hence, plaintiffs assert that the statute of limitations did not expire until January 28, 2002, and the amended complaint was timely filed on November 28, 2001.

The Third Circuit has provided the following guidance in ascertaining state substantive law:

> [T]he decisions of the Pennsylvania Supreme Court are, of course, the authoritative source. *See, e.g., Connecticut Mut. Life. Ins. Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). If the Pennsylvania Supreme Court has not yet passed on the issue before us, we must consider the pronouncements of the lower state courts, *see id.,* as well as federal appeals and district court cases interpreting state law, *see, e.g., Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 406 (3d Cir.2000).

*State Farm Mut. Automobile Ins. Co. v. Coviello,* 233 F.3d 710, 713 (3d Cir.2000).

Applying state supreme court precedent to the present matter is problematic in that the last two discovery rule cases have resulted in an evenly divided supreme court. *See Baumgart v. Keene Building Products Corporation,* 542 Pa. 194, 666 A.2d 238 (1995); *Murphy v. Saavedra,* 560 Pa. 423, 746 A.2d 92 (2000). *See also Weik*

*v. Estate of Margaret D. Brown,* 794 A.2d 907, 911 n. 1 (Pa.Super.2002) ("Indeed, the Courts are grappling with the issue of whether the discovery rule can be invoked when a plaintiff actually discovers his injury within the applicable statute of limitations but fails to institute action until after the statute expires.") (citations omitted).

However, prior to *Baumgart* and *Murphy,* Pennsylvania's high court issued a decision holding that the discovery rule is inapplicable when the injury is discovered or reasonably discoverable within the initial statutory period. In *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471–72 (1983), a delivery driver crashed into a support beam in a tunnel at plaintiff's racetrack. The tunnel was subsequently closed to traffic and sealed. When the tunnel reopened, plaintiff discovered that the tunnel had collapsed. Plaintiff did not file suit against the defendant for the delivery driver's negligence until approximately two years and two weeks after the delivery driver's accident, or about one year after plaintiff's discovery of the tunnel's collapse. The trial court granted defendant's motion for summary judgment based on the statute of limitations. The superior court reversed finding that a genuine issue of material fact existed as to when plaintiff discovered or reasonably should have discovered the injury. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 305 Pa.Super. 466, 451 A.2d 741, 744 (1982). The supreme court reinstated summary judgment, stating:

> the "discovery rule" exception arises from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were *actually* ascertained within the period. Here, the

---

**4.** As set forth in Section I, plaintiffs acknowledge an "awakening" to the malpractice claims on January 28, 2000. (Doc. 48, pp. 5, 13).

Raceway, having the ability to ascertain the cause of the action and to institute the suit within the applicable period of limitations and having failed to do so, the statute bars the action.

*Pocono*, 468 A.2d at 471–72 (emphasis in original). The court concludes that the above quoted language *is* the state supreme court's pronouncement of the discovery rule applicable to the facts of this case.

■ Plaintiffs argue that the court should follow the Pennsylvania supreme court justices who wrote in support of reversal in the non-precedential cases of *Baumgart* and *Murphy*, because their view more effectively carries out the purpose of the discovery rule.[5] In support of this argument, plaintiffs point to the recent Third Circuit opinion in *Hughes v. United States*, 263 F.3d 272 (3d Cir.2001). *Hughes*, however, is factually distinguishable. *Hughes* involved claims made under the Federal Tort Claims Act for allegedly negligent care provided at a Veterans Administration Medical Center in Charleston, South Carolina. Hence, *Hughes* did not address *Pennsylvania* case law on the application of the discovery rule. The court's analysis is restricted to the application of *Pennsylvania* substantive law.

In order to show the attendant inequity of the discovery rule as expressed in *Pocono, supra,* plaintiffs recounted at oral argument the "week before/week after" hypothetical of the *Baumgart* opinion in support of reversal. This hypothetical juxtaposes (1) a plaintiff who discovers his injury the week before his statutory period expires and has only one week in which to file his complaint and (2) a plaintiff who reasonably discovers his injury the week after his statutory period expires and enjoys the full two-year period in which to prepare his complaint. *See Baumgart,* 666 A.2d at 245 (Opinion in Support of Reversal). While the court is sympathetic to this potentially harsh application of the discovery rule, the same potentially harsh result arises whenever an action is time barred even though it is filed one week or only one day late. *See Murphy,* 746 A.2d at 95 n. 4.

The court notes that the Pennsylvania superior court has followed our interpretation of the discovery rule (as expressed in *Pocono*) on two occasions subsequent to the supreme court split decisions in *Murphy* and *Baumgart. See Bowe v. Allied Signal, Inc.,* 806 A.2d 435, 439 (Pa.Super.2002) ("The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained *within the prescribed statutory period,* the limitations period does not begin to run until the discovery of the injury is reasonably possible.") (emphasis added); *Gatling v. Eaton Corp.,* 807 A.2d 283 (Pa.Super.2002) (same). The discovery rule as expressed in *Pocono* has also been followed by the Eastern District of Pennsylvania in *Wilder v. United States,* 230 F.Supp.2d 648, 651 (E.D.Pa.2002):

> the law welcomes his action to regain what has wrongfully been taken away from him. And in such a situation one may not be charged with dreaming away his right to recover if even the most watchful vigilance could not appraise him of the damage being done him."

*Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788, 792–93 (1959).

---

**5.** The purpose of the discovery rule is to avoid punishment of "blameless ignorance" of a cause of action. *Pocono,* 468 A.2d at 471. The Pennsylvania supreme court has expounded on this purpose as follows:

> "Laches becomes a barrier to the institution of lawsuits because the injured person has slept on his rights, but if somnolence has not corroded away his claim to recovery,

"Where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992) (citation omitted). "Conversely, if the existence of the injury and cause thereof are reasonably ascertainable within the two-year statutory period, the discovery rule does not apply and no tolling occurs." *Baumgart v. Keene Building Products Corp.*, 542 Pa. 194, 199, 666 A.2d 238, 240 (1995).

 In light of the foregoing discussion, the court holds that, under Pennsylvania law, the discovery rule is inapplicable when the injury is discovered or is reasonably discoverable within the statutory period of limitations. *Pocono*, 468 A.2d at 471–72. *See also Bowe v. Allied Signal, Inc.*, 806 A.2d 435 (Pa.Super.2002); *Gatling v. Eaton Corp.*, 807 A.2d 283 (Pa.Super.2002) and *Wilder v. United States*, 230 F.Supp.2d 648, 651 (E.D.Pa.2002). Plaintiffs admit to an "awakening" on January 28, 2000, less than two years from the date of the alleged malpractice. Therefore, the discovery rule is inapplicable.

## B. *Fraudulent Concealment*

 Plaintiffs also argue that the limitations period should be tolled because of defendants' alleged fraudulent concealment. This exception to the statute of limitations tolls the statute when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Bohus*, 950 F.2d at 925. For this exception to apply, "there must be an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury." *Id. See also Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267, 269 (1963), *McDowell v. Raymond Industrial Equipment*, 2001 WL 115463, *1, 2001 U.S. Dist. LEXIS 1142, *5 (E.D.Pa.2001) ("The doctrine allows for the tolling of the statute of limitations where a defendant or his agent actively mislead the plaintiff as to the identity of the proper defendants until after the statute of limitations has expired."). *Plaintiffs have the burden of proving fraudulent concealment by "clear, precise and convincing" evidence. Bohus*, 950 F.2d at 925 (quoting *Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792, 794 (1987)).

Plaintiffs argue that there is a "genuine issue" of material fact regarding whether defendants concealed their participation in Jose Calle's treatment on August 14, 1999. However, a "genuine issue" of material fact exists only when "a reasonable trier of fact, viewing all of the evidence, could rationally find in favor of the nonmoving party *in light of the burden of proof placed on the nonmover.*" *U.S. v. Premises Known as RR # 1, Box 224, Dalton, Scott Township and North Abington Township, Lackawanna County, Pennsylvania*, 14 F.3d 864, 870 (3d Cir.1994) (emphasis added). *See also Alcman Services Corporation v. Bullock*, 925 F.Supp. 252, 256 (D.N.J.1996) ("A genuine issue of material fact for trial does not exist 'unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor.'") (citations omitted).

 As stated above, in order for the statute of limitations to be tolled, plaintiffs must show fraudulent concealment by "clear, precise and convincing" evidence. *Bohus*, 950 F.2d at 925. "The clear and convincing standard requires evidence that

is 'so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts of the issue.'" *Rohm and Haas Co. v. Continental Cas. Co.*, 566 Pa. 464, 781 A.2d 1172, 1179 (2001).

■ The gravamen of plaintiffs' alternative tolling argument is concealment of the Nicholson defendants' participation in the injury, as opposed to concealment of the injury itself. Therefore, the question the court must answer is whether, on the evidence in the record, and after making all reasonable inferences in plaintiffs' favor, a reasonable jury could find fraudulent concealment of the Nicholson defendants' treatment of Mr. Calle. In support of their fraudulent concealment argument, plaintiffs provide only limited relevant evidence.

Plaintiffs submit two identical letters from counsel and addressed to York Hospital medical records custodian, dated January 12, 2001, and May 24, 2001, in which plaintiffs' counsel requests the release of Mr. Calle's medical records. (Doc. 49, Exhibit A). Accompanying these letters is a copy of an "Authorization For Medical Information" signed by Jose Calle on December 27, 2000, and a photocopy of a check drawn on a Downs & Associates checking account bearing the memo "Copies—Jose Calle." *Id.*

In his affidavit, Mr. Calle states that ["p]rior to the initiation of this lawsuit I was unable to obtain the information about who the various health care providers where [sic] given my limited exposure to the physicians during my August 1999 admission to York Hospital." (Doc. 49, Exhibit A, Jose Calle Affidavit, ¶ 5, signed July 15, 2002). Mr. Calle further states that, "As an inmate, I experienced great difficulty in obtaining medical records from my hospitalization at York Hospital. I did not receive a *complete* copy of my chart

until my lawyer accomplished the same in litigation." *Id.* at ¶ 7. (emphasis added).

In her affidavit, Mrs. Calle asserts: "As my husband is an inmate and we speak primarily Spanish, I experienced great difficulty in obtaining medical records from my husband's August 14, 1999 through August 16, 1999 hospitalization at York Hospital." (Doc. 49, Exhibit A, Luz Calle Affidavit, ¶ 5, signed July 16, 2002). She further claims to have visited York Hospital on August 18, 1999, and filled out a form requesting Mr. Calle's medical records. *Id.* at ¶ 6. However, Mrs. Calle states that "the hospital never sent me a copy of the requested medical records." *Id.* at ¶ 7. The court notes with interest that Mrs. Calle acknowledges the assistance of Mr. Calle's criminal defense attorney, Mr. William Fulton, Esquire, in obtaining the majority of her husband's medical records: "Mr. Fulton, Esq. did receive the medical records, but they were missing the EKG and August 14, 1999 emergency room admission records." (Doc. 49, Exhibit A, Luz Calle Affidavit, ¶ 15).

Plaintiffs also submitted an affidavit signed by attorney Lee Friedland. (Doc. 49, Exhibit A, Lee Friedland Affidavit, signed July 17, 2002). Mr. Friedland attests to the fact that his office database shows numerous attempts by letter and telephone to get Mr. Calle's remaining medical records. *Id.* at ¶ 3. He further states that Mr. Calle was unable to identify the Nicholson defendants because, *inter alia,* "York Hospital's failure to send my [sic] the missing EKG and emergency room admission report on Jose Calle." *Id.* at ¶ 5.

The court finds this evidentiary showing inadequate and concludes that a reasonable jury could not find fraudulent concealment. Pared to its essence, plaintiffs can

only demonstrate that they requested medical records and that they, in fact, received most of the requested records. (*See* doc. 49, exhibit A, Luz Calle Affidavit, ¶ 15). The only allegedly missing medical records were the "EKG and August 14, 1999 emergency room admission records." *Id.* Although plaintiffs fail to identify precisely what records they received, the court notes that there are multiple references to Dr. Nicholson in the medical records, *including references in records other than the missing EKG and emergency room report. See, e.g.,* In–Patient Coding Summary Form (doc. 51, exhibits A); History & Physical Examination/Progress Notes of Kathleen B. Kay, M.D. (doc. 51, exhibit C); and Physician's Treatment Record of August 14, 1999 (doc. 51, exhibit D).

The court also notes that the record is devoid of evidence that plaintiffs made *any* specific inquiries about the *identity of Mr. Calle's doctors.* Mrs. Calle purportedly asked to speak with Mr. Calle's doctors on August 18, 1999, "in order to find out my husband's condition." (Doc. 49, Exhibit A, Luz Calle Affidavit, ¶ 8). Although the doctors were unavailable, the head nurse involved with Mr. Calle's care spoke willingly with Mrs. Calle about the treatment provided to her husband. While the doctrine of fraudulent concealment does not require "fraud or concealment in the strictest sense," *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792, 794 (1987), the defendant must at least be cognizant of the inquiry. Therefore, the court finds that, on this record, a reasonable jury could not find that plaintiffs were the victims of fraudulent concealment under applicable law. *See Bohus,* 950 F.2d at 925; *Schaffer,* 189 A.2d at 269–270; *McDowell v. Raymond Industrial Equipment, Ltd.,* 2001 WL 115463 at *1, 2001 U.S. Dist. LEXIS 1142 at *5. Accordingly, the statute of limita-

tions was not tolled based on fraudulent concealment.

Because the Nicholson defendants were added to the complaint after August 14, 2001, and because the statute of limitations was not tolled, the court finds that plaintiffs' claims against the Nicholson defendants are barred by the statute of limitations. 42 Pa.C.S.A. § 5524(2). Therefore, the Nicholson defendants are entitled to judgment as a matter of law.

## IV. *Conclusion*

For the foregoing reasons, the court will grant the Nicholson defendants' motion for summary judgment.